## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

JACK ALAN GROENENDAL,

   *Plaintiff*,

 v.

EXECUTIVE OFFICE FOR U.S.
ATTORNEYS, *et al.*,

   *Defendants.*

</td><td>

No. 20-cv-1030 (DLF)

</td></tr>
</table>

## <u>MEMORANDUM OPINION</u>

  Jack Alan Groenendal, proceeding *pro se*, brings this action against the Executive Office for United States Attorneys (EOUSA), United States Immigration and Customs Enforcement (ICE), and Department of Homeland Security (DHS) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.*  In the last decade or so, Groenendal has submitted over 30 FOIA requests with EOUSA and 17 FOIA requests with ICE.  This suit concerns six of Groenendal's requests to EOUSA and two to ICE.  Before the Court are the defendants' Motion for Summary Judgment, Dkt. 92, and Groenendal's Cross-Motion for Summary Judgment, Dkt. 95, Motion for Discovery, Dkt. 97, Motions for in Camera Review, Dkts. 99, 100, Motion for an Extension of Time to File a Notice of Appeal, Dkt. 105, Motion to Expedite, Dkt. 108, and a Motion for Leave to File a Motion for Judicial Resolution, Dkt. 110.  For the reasons that follow, the Court will grant the defendants' Motion for Summary Judgment and deny Groenendal's various motions.

## I.     BACKGROUND[1]

In 2007, Groenendal pleaded guilty to possession of child pornography, and he was sentenced to 42 months' imprisonment and 3 years' supervised release.  *See United States v. Groenendal*, No. 07-cr-93 (W.D. Mich. Oct. 29, 2007), Dkt. 38.  While on supervised release in 2011, Groenendal performed internet searches yielding pornographic results, and a computer-forensics investigator later discovered adult and child pornographic images in "temporary storage" on his hard drive.  *United States v. Groenendal*, No. 11-cr-260, 2020 WL 3046010, at *2 (W.D. Mich. June 8, 2020).  In June 2013, Groenendal was indicted in the Western District of Michigan for attempted receipt and attempted possession of child pornography.  *Id.* at *1.  A jury convicted Groenendal, and he was sentenced to 15 years' imprisonment for his offenses.  *Id.* at *3.

Since then, Groenendal has "submitted over 30 FOIA requests with" EOUSA and "a minimum of seventeen FOIA request[s] or appeals to" ICE about his criminal cases.  Defs.' Statement of Materials Facts ¶¶ 4, 38, Dkt. 92-1; *see* Supp. Finney Decl. ¶ 8, Dkt. 102-3.  Below, the Court summarizes the groups of FOIA requests at issue here.

**EOUSA Group 1**:  On September 11, 2014, Groenendal filed a FOIA request (2014-04282) with EOUSA, seeking, among other things, a "HIPPA complaint," all documents from "U.S. Dep[artment] of Justice" and "U.S. Probation Office," and "any and all communications . . . with Attorney Samouris, US Probation Office and monitoring software

---

[1] Unless otherwise noted, the facts in this opinion are drawn from the uncontested facts in the Defendants' Statement of Material Facts, Dkt. 92-1.  *See Hawkins v. District of Columbia*, No. 17-cv-1982, 2020 WL 601886, at *4 (D.D.C. Feb. 7, 2020) ("[I]n ruling on a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted . . . in [the non-moving party's] opposition to the motion." (internal quotation omitted)).  Otherwise, the opinion recounts the facts as established in "depositions, answers to interrogatories, and admissions on file, together with the affidavits" to determine whether there is any "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing Fed. R. Civ. P. 56).

company (Judy Hogaboom)." Supp. Finney Decl. ex. A at 1 (typeface altered); Supp. Finney Decl.

¶ 13.  On April 28, 2015, Groenendal filed another FOIA request (2015-02537), requesting all

communications "from/to Special Agent Blair Babcock," "from Judy Hogaboom forwarded to"

the U.S. Attorney's Office "by Blair Babcock," and "anything forwarded from Attorney Fotieo or

Attorney Samouris." Supp. Finney Decl. ex. A at 4; Supp. Finney Decl. ¶ 15.  EOUSA determined

that the U.S. Attorney's Office for the Western District of Michigan was the "only District with

potentially responsive documents." Defs.' Statement of Material Facts ¶ 10.  After searching

electronic and paper records, EOUSA initially disclosed 1,247 pages released in full, 295 pages

released in part, and 7 pages withheld in full. *Id.* ¶ 12; *see* Supp. Finney Decl. ex. B at 1.  Upon

further review, EOUSA determined that 2 pages withheld in full should be released in part. Defs.'

Statement of Material Facts ¶ 13.  A remaining page withheld in full was Groenendal's presentence

report, which he may review subject to Bureau of Prisons regulation. *Id.*  Groenendal appealed

the EOUSA's response to the Office of Information Policy (OIP), which affirmed EOUSA's search

and release.  Supp. Finney Decl. ¶ 22.  EOUSA claims that 297 pages released in part are exempt

from disclosure under FOIA Exemptions 5, 6, and 7(c), 4 pages withheld in full are exempt under

FOIA Exemptions 6 and 7(c), and 1 page is withheld in full under BOP policy. *See* Defs.'

Statement of Material Facts ¶¶ 14–17; *see* 5 U.S.C. § 552(b)(5), (6), (7)(C).

**EOUSA Group 2**:  On July 2, 2015, Groenendal filed a FOIA request (2015-03260),

seeking letters and replies about a "HIPAA complaint" and "letters/emails [he] sent to the" Grand

Rapids Michigan "U.S. Attorney's Office."  Supp. Finney Decl. ex. D at 1; Supp. Finney Decl.

¶ 28.  EOUSA determined that the U.S. Attorney's Office for the Western District of Michigan

was the "only District with potentially responsive documents."  Defs.' Statement of Material Facts

¶ 19.  After searching email and case-tracking databases, the EOUSA informed Groenendal on

October 30, 2015 that there were no responsive records.  *See id.* ¶¶ 20, 21; Supp. Finney Decl. ex. E at 1.  On appeal, OIP affirmed EOUSA's search.  *See* Supp. Finney Decl. ¶ 33.

**EOUSA Group 3**: On October 10, 2015, Groenendal filed a FOIA request (2016-00286 and 2016-01068), requesting "any/all letters[,] emails, or notes to or from Attorney Sharon Turek case 1:11-cr-00260-PLM."  Supp. Finney Decl. ex. F at 1; Defs. Statement of Material Facts ¶ 22. EOUSA determined that the U.S. Attorney's Office for the Western District of Michigan was the "only District with potentially responsive documents."  Defs.' Statement of Material Facts ¶ 36. After an email search by an AUSA, *see* Supp. Finney Decl. ¶ 37, EOUSA initially disclosed 136 pages released in full, 54 pages released in part, and 2 pages withheld in full, *see* Supp. Finney Decl. ex. G at 1.  Groenendal appealed EOUSA's initial response, and OIP affirmed in part as to the 2 pages withheld in full.  *See* Defs. Mot. to Dismiss ex. C at 1, Dkt. 60-3.  Review of EOUSA Group 3 was thus limited to the 2 pages withheld in full, *see* Order of Jan. 24, 2023 at 2–3, Dkt. 77, but EOUSA has since released in full the 2 pages, *see* Supp. Finney Decl. ex. H.

**EOUSA Group 4**: On March 10, 2016, Groenendal submitted a FOIA request (2016-001954) seeking "audio of my Oct. 2013 trial," records about "contact with the court reporter Kathleen Thomas," and "letters, emails, or notes to or from Paul Neel regarding" Groenendal's prosecutions.  Supp. Finney Decl. ex. I at 1; Supp. Finney Decl. ¶ 41.  EOUSA determined that the U.S. Attorney's Office for the Western District of Michigan was the "only District with potentially responsive documents."  Defs.' Statement of Material Facts ¶ 27.  After searching relevant sources, EOUSA informed Groenendal on February 27, 2017 that there were no responsive records outside of those produced in response to Groenendal's previous FOIA requests. *See id.* ¶ 29; Supp. Finney Decl. ex. J at 1.  On appeal, OIP affirmed "on partly modified grounds," holding that (1) EOUSA correctly concluded there were no audio-recording records and (2) to the

extent any records responsive to the remainder of Groenendal's Group 4 request exist, they would be exempt from disclosure under Exemptions 6 and 7(C).  Supp. Finney Decl. ex. K at 1–2.

**EOUSA Group 5**: On October 5, 2017, Groenendal submitted a FOIA request (2018-000633), seeking "[a]ny and all letters, faxes, e-mails and notes" regarding his prosecutions "plus investigation notes."  Supp. Finney Decl. ex. L at 1; Supp. Finney Decl. ¶ 46.  On November 15, 2017, Groenendal narrowed his request to "Exhibits 1, 2, and 3" in "Case No. 1:07-cr-00093-PLM-1."  Supp. Finney Decl. ex. L at 4.  In Groenendal's first criminal case, the government "introduced Exhibits[] 1, 2, and 3 at the preliminary/detention hearing," but they are not on the public docket.  Supp. Finney Decl. ¶ 48.  EOUSA determined that the U.S. Attorney's Office for the Western District of Michigan was the "only District with potentially responsive documents."  Defs.' Statement of Material Facts ¶ 32.  The Western District discovered 150 pages of responsive records but determined the exhibits "contain pornographic material."  *Id.* ¶¶ 33, 34.  EOUSA informed Groenendal on December 20, 2019 that it would withhold in full all 150 pages under Exemptions 3, 7(C), and 7(F).  *See* Supp. Finney Decl. ex. M at 1.  On appeal, OIP affirmed on partly modified grounds, holding the records are exempt under the Privacy Act and Exemptions 7(C) and 7(F).  *See* Supp. Finney Decl. ex. N at 1–2.  OIP did not reach Exemption 3.  *See id.* at 2 n.1.

Upon further review, EOUSA determined that Exhibit 1 "is a computer monitoring report consisting of 23 pages that contains pornographic images" that "are not labeled as children or adult"; Exhibit 2 "is 123 pages of [the same] computer monitoring report that contain[s] search engines and search terms"; and Exhibit 3 "is 4 pages of computer monitoring that contain child pornographic images saved to Plaintiff's computer."  Supp. Finney Decl. ¶¶ 53–55.  EOUSA now claims the records are exempt under Exemptions 3, 7(C), 7(E), and 7(F).  *Id.* ¶¶ 50, 92.

**EOUSA Group 6**:  On March 27, 2018, Groenendal submitted a FOIA request (2018-003379) discussing "a recent Sixth Circuit case" and his 28 U.S.C. § 2255 motion before the Western District of Michigan.  *See* Supp. Finney Decl. ex. O at 1–4; *see* Supp. Finney Decl. ¶ 56.  EOUSA informed Groenendal on May 4, 2018 that his request "did not reasonably describe the records requested," and EOUSA was thus unable to conduct a reasonable search.  Defs.' Statement of Material Facts ¶¶ 36–37; *see* Supp. Finney Decl. ex. P at 1–2.  On appeal, OIP affirmed for the reasons stated by EOUSA.  *See* Supp. Finney Decl. ex. Q at 1.

**ICE Group 1**:  On April 17, 2015, Groenendal submitted a FOIA request (2015-ICFO-80026) seeking records "on Blair Babcock's synopsis" on "Case # GPO7QT11GP0015" and communications about "case # 1:11-cr-260" from Rhonda Wallock, Daniel Mekaru, Sean Lewis, Deno Fotieo, and Peter Samouris.  Pineiro Decl. ex. A at 1, Dkt. 92-5; Pineiro Decl. ¶ 7(a).  After searching electronic and paper records, on December 14, 2015, ICE disclosed 8 pages released in full and 209 pages released in part.  *See* Pineiro Decl. ex. B at 1.  ICE cited FOIA Exemptions 3, 5, 6, 7(C), and 7(E) and the Privacy Act as bases for withholding.  *See id.* at 1–3.  Groenendal has not appealed ICE's response, and it is not at issue in this litigation.  *See* Pineiro Decl. ¶ 7(d).

**ICE Group 2**:  On March 12, 2018, Groenendal filed a FOIA request (2019-ICFO-22910) seeking information about ICE Group 1, "attorney Deno Fotieo and investigator Adam Kelly," and "attorney [Peter] Samouris and or J.D. Gifford & Gary Wake [from] August 20, 2012 until Nov[ember] 19, 2012."  Pineiro Decl. ex. C at 1; Pineiro Decl. ¶ 8(b).  ICE tasked the Homeland Security Investigation Program (HSI) with searching for responsive records, and "HSI informed ICE that its investigation of Plaintiff concluded in 2014 and no new records involving Plaintiff were generated since January 2014."  Second Pineiro Decl. ¶ 13(c)–(d), Dkt. 102-5.  ICE informed Groenendal on December 13, 2018 that "no records responsive to your request were found."

Pineiro Decl. ex. D at 1.  On appeal, ICE affirmed and determined that it previously released all records responsive to ICE Group 2 in response to ICE Group 1.  *See* Pineiro Decl. ex. G; Pineiro Decl. ¶ 26(f).

**ICE Group 3**:  On December 12, 2018, Groenendal filed a FOIA request (2019-ICFO-27520) seeking information about ICE Group 1; "[a]ny and all letters, faxes, e-mails or notes sent to or received from attorney Deno Fotieo or forensic investigator Adam Kelly" from August 22, 2011 through March 5, 2012; and "[a]ny and all letters, faxes, notes, and e-mails sent to or received from attorney Peter Samouris, forensic investigator Gary Wake, or forensic investigator JD Gifford from March 5, 2012 through August 31, 2013."  Pineiro Decl. ex. H at 3–4.  ICE again tasked HSI with searching for records, and HSI identified "no new records involving Plaintiff" since "January 2014."  Second Pineiro Decl. ¶ 14(c)–(d).  ICE informed Groenendal on March 21, 2019 that "no records responsive to your request were found."  Pineiro Decl. ex. I at 1.  On appeal, ICE affirmed the adequacy of the search and determined that it released all records responsive to ICE Group 3 in response to ICE Group 1.  *See* Pineiro Decl. ex. L at 1; Pineiro Decl. ¶ 27(d), (f).

\*   \*   \*

On April 16, 2020, Groenendal filed suit under the Freedom of Information Act, 5 U.S.C. § 552, against EOUSA, OIP, DHS, and ICE.  *See* Complaint at 1, Dkt. 1.  After the Court struck his Second Amended Complaint under Rule 8 of the Federal Rules of Civil Procedure, *see* Order of May 26, 2021, Dkt. 38, Groenendal filed the operative Third Amended Complaint, *see* Dkts. 45, 53.  The government moved for a partial dismissal for failure to exhaust, *see* Mot. to Dismiss, Dkt. 60, and the Court granted in part and denied in part, *see* Order of January 24, 2023, Dkt. 77. The Court dismissed claims related to an unexhausted FOIA request not relevant here, partially dismissed claims related to EOUSA Group 3 except as to the 2 pages withheld in full, and

dismissed OIP as a defendant.  *See id.* at 2–4.  As discussed *supra*, EOUSA subsequently released the 2 pages at issue in Group 3.  *See* Supp. Finney Decl. ex. H.  Now, both parties move for summary judgment, *see* Dkts. 92, 95, and Groenendal seeks discovery, *in camera* review, and an extension of time to file a notice of appeal, *see* Dkts. 97, 99, 100, 105.  He has also moved to expedite and for leave to file a motion for judicial resolution under Rule 12(c), which the Court construes as a motion to expedite.  *See* Dkts. 108, 110.

## II.   LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Materiality is, of course, a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (cleaned up).  All facts and inferences must be viewed in the light most favorable to the requester and the agency bears the burden of showing that it complied with FOIA.  *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

"The system of disclosure established by the FOIA is simple in theory.  A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)."  *DOJ v. Julian*, 486 U.S. 1, 8 (1988).  "[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations of the FOIA have been met."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam).  The agency's affidavit is accorded a presumption of good faith, *SafeCard Servs. v. SEC*, 926 F.2d 1197,

1200 (D.C. Cir. 1991), and "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence . . . or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (cleaned up).  The D.C. Circuit has recognized that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.   ANALYSIS

The Court will grant the defendants' motion for summary judgment, deny Groenendal's cross-motion for summary judgment, and deny Groenendal's various other motions.

### A.   Adequacy of Search

The Court concludes that EOUSA and ICE performed adequate searches for records responsive to Groenendal's FOIA requests.  At summary judgment, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  The adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Id.* at 1485 (emphasis in original).  "Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to

the adequacy of the search." *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citing *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

EOUSA provided the declaration of Auborn Finney, an Attorney-Advisor with EOUSA's FOIA staff.  *See* Finney Decl. ¶ 1, Dkt. 92-4.  After Groenendal filed his opposition and cross-motion, Finney submitted a supplemental declaration.  *See* Second Finney Decl. ¶ 12.  In addition, ICE provided the declaration of Fernando Pineiro, an officer in ICE's FOIA Office.  *See* Pineiro Decl. ¶ 1.  Like Finney, Pineiro also subsequently filed a supplemental declaration.  *See* Second Pineiro Decl. ¶ 4.

The Court has reviewed in detail all four declarations and relevant exhibits concerning Groenendal's eight FOIA requests and concludes that EOUSA's and ICE's searches were adequate.  As to EOUSA Groups 1 through 5, Finney describes that EOUSA reasonably determined that the U.S. Attorney's Office for the Western District of Michigan was the only office likely to have responsive records because it was the office that prosecuted Groenendal.  *See* Supp Finney Decl. ¶¶ 16, 29, 36, 42, 48.  Although the Court need not recount it here, as to each Group of FOIA requests, Finney provides meticulous details about the relevant record-keeping systems (including electronic and hardcopy sources), the appropriate record custodians, and search terms. *See, e.g.*, *id.* ¶¶ 16–23, 29–32, 36–38, 42–43, 48–55.  Groenendal's requests are challenging to parse, but EOUSA deployed search terms reasonably calculated to yield potentially responsive records.  Finney further explains how the U.S. Attorney's Office reviewed (and in the cases of Groups 1, 3, and 5, re-reviewed) responsive records.  *See id.* ¶¶ 23, 38–39, 56–57.

As to EOUSA Group 6, Finney accurately represents that Groenendal's request lacks any explicit description of records sought.  *See id.* ¶¶ 56–57.  Indeed, Groenendal apparently filed this FOIA request to share that he "discovered a recent Sixth Circuit case that should be shared with

the various government agencies that [he] ha[s] written to recently"—a plainly inappropriate use of FOIA procedures.  Supp. Finney Decl. ex. O at 1.  EOUSA's conclusion that it had no basis to search for responsive records was thus reasonable under the circumstances.

As to Groenendal's FOIA requests to ICE, Pineiro also provides a more-than-adequate description of the agency's search.  In addition to providing an overview of ICE's standard procedures for record searches, *see* Pineiro Decl. ¶¶ 10–24, he elaborates on the specific procedures used to respond to ICE Groups 1, 2, and 3, *see id.* ¶¶ 25–34.  Although ICE Group 1 is not at issue here, Pineiro represents that "HSI was the directorate likely to have responsive records," and the Court concludes that this search limitation was appropriate given that HSI investigates child exploitation—the category of crime for which Groenendal was convicted.  *Id.* ¶ 25(b); Second Pineiro Decl. ¶ 14(c).  Pineiro also details the electronic and hardcopy systems searched, the search terms used, and the review of responsive records.  Pineiro Decl. ¶ 25(b)–(h).

As to ICE Groups 2 and 3, Pineiro again represents that "HSI was the directorate likely to have responsive records," and he further describes the process by which the agency determined that "no new [responsive] records involving" Groenendal "were generated since January 2014," meaning ICE had no additional records to disclose that were not already disclosed in ICE Group 1.  *Id.* ¶¶ 26(b), (c), 27(b)–(d); *see also* Second Pineiro Decl. ¶¶ 13(d), 14(d).  "[I]n an abundance of caution," ICE nevertheless "conducted a review of the records responsive to FOIA [Group] 1" to determine if there were any additional "potentially responsive records to FOIA [Groups] 2 and 3."  Pineiro Decl. ¶ 30.  This "line-by-line" review revealed that all "potentially responsive records" to Groups 2 and 3 were already disclosed in response to Group 1.  *Id.* ¶¶ 31, 34.

Groenendal's numerous and repetitive FOIA requests are not models of clarity, but the Finney and Pineiro declarations assure the Court that both agencies have, in good faith, met their

burden of producing a "reasonably detailed affidavit" describing its process of searching and reviewing responsive records. *Hunton & Williams LLP*, 248 F. Supp. 3d at 236.

Scattered across his approximately 150 pages of briefing, Groenendal raises a handful of arguments as to why the agencies' searches were inadequate. All are meritless. First, he argues that their searches failed to yield records of (1) an "e-mailed plea offer" of "a 5-year plea deal" and (2) a computer-monitoring report from his period of supervised release. Opp'n at 11, 22, Dkt. 94. As to the computer-monitoring report, the Supplemental Finney Declaration represents that EOUSA's response to Groenendal's Group 5 requests contains the computer-monitoring report at issue. *See* Supp. Finney Decl. ¶¶ 53–55. That EOUSA found the report but withheld it in full does not suggest the search was inadequate; rather, it suggests the exact opposite. As to the "e-mailed plea offer" of "a 5-year plea deal," it is blackletter FOIA law that "[t]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). "[T]he fact that a particular document," here an alleged offer of a 5-year plea deal that Groenendal allegedly accepted, "was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div. of Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007). Indeed, Groenendal offers no more than speculation that the alleged plea document exists and that an adequate search of EOUSA's archives would uncover it.

Second, Groenendal argues that both agencies acted in bad faith. *See, e.g.*, Opp'n at 7–10. "Once the agency has provided a reasonably detailed declaration describing its search, the burden shifts to the FOIA requester to produce countervailing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Heartland All. for Hum. Needs & Hum. Rts. v. USCIS*, 406 F. Supp. 3d 90, 110 (D.D.C. 2019) (cleaned up). "[T]he burden is on the

requester to rebut that evidence by a showing that the search was not conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).  Groenendal has fallen woefully short of satisfying his burden.  Groenendal faults the defendants for alleged "misconduct" occurring during his criminal prosecutions in the Western District of Michigan.  *See, e.g.*, Cross-Mot. for Summ. J. at 30–31, Dkt. 95.  His allegations boil down (as far as the Court can tell) to an accusation that the government violated Rule 16 by "refus[ing] to disclose the exam results of the actual screen shots" or "actual screen captures from [his] paid computer monitor"; relying on Special Agent Babcock's "lie" that "illegal images were captured by the computer monitor"; and a coverup of the fact Groenendal's "monitored computer never clicked any 'live' links to visit any child pornography websites." Opp'n at 2, 22, 66.  He offers no support for these allegations, and Groenendal fails to accept that a unanimous jury of his peers and numerous federal judges have rejected his theories before.  *See Groenendal*, 2020 WL 3046010, at *3.  Even putting that aside, Groenendal fundamentally misunderstands that "the government's obligations in a FOIA case are not the same as its obligations in the underlying criminal case," *Petrucelli v. DOJ*, 106 F. Supp. 3d 129, 134 (D.D.C. 2015).  Although the Court liberally construes his filings, it will not impute bad faith to EOUSA and ICE FOIA agents without a scintilla of evidence.

As additional evidence of bad faith, Groenendal points to the defendants' "continued delay[s]" during this litigation.  Cross-Mot. for Summ. J. at 2.  But the defendants' requests for extensions, especially to permit adequate time to respond to Groenendal's unclear, lengthy, and proliferating filings, are a routine part of FOIA litigation and, without more, do not serve as a basis for a bad-faith finding.  *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 292 F. Supp. 3d 284, 288 (D.D.C. 2018) ("Courts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith." (cleaned up)).

Further, to the extent Groenendal bases his bad-faith allegations on the failure of the agencies to find certain sought-after records, *see* Cross-Mot. for Summ. J. at 4, those arguments are rejected for the reasons stated *supra*.  Indeed, Groenendal cannot rebut the presumption of good faith with such "purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

Finally, Groenendal attempts to pinpoint three deficiencies in ICE's search, but he is off the mark as to each.  *First*, contrary to Groenendal's suggestion, ICE did not use the "[w]rong dates" by failing to search "for any items in 2014 or after."  Opp'n at 68.  ICE Group 2 requested records from "August 20, 2012 until Nov[ember] 19, 2012," Pineiro Decl. ex. C at 1, and ICE Group 3 requested records ranging from "Aug[ust] 22, 2011" to "August 31, 2013," *id.* ex. H at 4.  But as the Second Pineiro Declaration makes clear, in response to Group 1, ICE's "search would have captured the records" in those timeframes and "no new records involving Plaintiff were generated since January 2014."  Second Pineiro Decl. ¶ 13(b), (d).  As such, ICE did in fact search for items that postdated 2014 and found that none existed.

*Second*, Groenendal incorrectly argues that ICE erred by relying "only" on "the search term 'Groenendal'" when it could have used "every name" included in his Groups 2 and 3 requests.  Opp'n at 72.  An "agency need not deploy every conceivable search term or permit the FOIA requester to dictate the search terms in the course of litigation, but it must use terms reasonably calculated to locate responsive records." *Bernegger v. EOUSA*, 334 F. Supp. 3d 74, 86 (D.D.C. 2018).  Here, it was entirely reasonable for ICE to begin and end its search with the plaintiff's name because his numerous FOIA requests all orbit around himself and his underlying criminal cases.  *See Dorsey v. EOUSA*, 926 F. Supp. 2d 253, 256 (D.D.C. 2013) (holding that use of the "plaintiff's name as a search term" was "reasonably calculated to locate the records plaintiff seeks"

because the "plaintiff's FOIA request," like Groenendal's, "is properly construed as one for records about himself and his criminal case").

*Third*, Groenendal erroneously suggests ICE failed to search HSI's office in "Grand Rapids . . . in [Groups] 2 or 3." Opp'n at 72. But this misses the point. The Pineiro Declarations represents that ICE "tasked a Special Agent within the HSI Grand Rapids Field Office . . . to conduct searches" in response to Group 1, Pineiro Decl. ¶ 25(b), and ICE "released Plaintiff's entire investigative file to [him] in 2015," Second Pineiro Decl. ¶ 14(e). The Second Pineiro Declaration further explains that "no new records involving [Groenendal] were generated since January 2014." Second Pineiro Decl. ¶¶ 13(d), 14(d). Per HSI's representation to ICE, any records responsive to Groups 2 and 3 were thus "duplicative of records released to [Groenendal] in response to" Group 1, including all records discovered at the HSI Grand Rapids office. *Id.* ¶ 13(d), (e). So there were simply no new records to search in response to Groups 2 and 3, whether in Grand Rapids or elsewhere.

The Court thus finds Groenendal's spray-and-pray counterarguments all unavailing, and it has no trouble concluding that EOUSA's and ICE's searches were adequate.

### B.    Withholdings

FOIA creates a framework of presumptions and exemptions. If certain conditions are met, it is presumed that the request for documents must be granted. Specifically, the Act provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). That presumption is overcome, though, if certain exemptions are satisfied. *See id.* §§ 552a(j)(2), (k)(2), 552(b). Under a recent amendment to FOIA, "[a]n agency shall . . . withhold information

under" a FOIA exemption "only if . . . (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "(II) disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A).

EOUSA seeks to withhold records responsive to Groups 1 and 5.  In response to Group 1, EOUSA withheld in full 4 pages containing a third-party declaration under Exemptions 6 and 7(C); released 297 pages but withheld "third-party names, third-party addresses, names of law enforcement personnel, DOJ personnel, DOJ office numbers, and DOJ emails" under Exemptions 6 and 7(C); and released a 1-page email exchange (within its 297-page disclosure) but withheld a description of a proposed plea offer under Exemption 5.[2]  Supp. Finney Decl. ¶ 65.  In response to Group 5, EOUSA withheld in full 150 pages containing 23-page and 123-page computer monitoring reports and 4 pages of child pornography under Exemptions 3, 7(C), 7(E), and 7(F). *Id.* ¶¶ 50, 92.  For the following reasons, the Court concludes that the withholdings were proper.

---

[2] The Supplemental Finney Declaration also notes that EOUSA withheld in full one page responsive to Group 1 containing part of Groenendal's presentence report.  *See* Supp. Finney Decl. ¶ 23.  EOUSA does not claim any applicable FOIA exemption for this page of the PSR, and it is well established that the Freedom of Information Act generally requires disclosure of PSRs.  *See DOJ v. Julian*, 486 U.S. 1 (1988). But Groenendal does not appear to contest EOUSA's representation that disclosure of the PSR would conflict with Bureau of Prisons policy.  Even assuming Groenendal had not forfeited this issue, the D.C. Circuit has held (post-*Julian*) that "FOIA does not entitle [a plaintiff] to have copies of his PSRs" when he "was afforded a meaningful opportunity to review his PSRs and to take notes on them."  *Martinez v. BOP*, 444 F.3d 620, 625 (D.C. Cir. 2006); *see also Sample v. BOP*, 466 F.3d 1086, 1089 (D.C. Cir. 2006) ("Relying on pre-1996 cases, this Court held that since Martinez was afforded a meaningful opportunity to review his PSRs and to take notes on them, FOIA did not entitle him to retain a copy of them." (cleaned up)).  Otherwise, FOIA would serve as a workaround to BOP policy, which was crafted "based on concerns about inmate safety" that the Court is "loath to second-guess."  *Martinez*, 444 F.3d at 625. Here, EOUSA notes that "[a]ccess to [his] PSR will be granted in accordance with the enunciated policy of the Bureau of Prisons," meaning Groenendal will in principle have a meaningful opportunity to review his PSR in prison.  Supp. Finney Decl. ¶ 23.  As such, there does not appear to be any issue of improper withholding as to the PSR, and the Court will not order disclosure in light of inmate-safety concerns.

1.      *Exemptions 6 and 7(c)*

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011).  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while Exemption 7(C) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C).

When an agency invokes both exemptions, as here, courts "focus" on Exemption 7(C) because it "establishes a lower bar for withholding material." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (internal quotation marks omitted).  As a threshold matter, the agency invoking Exemption 7(C) must demonstrate the withheld records were "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  If this threshold is cleared, courts must then balance the privacy interests inherent in the records against the public's interest in their disclosure. *See Citizens for Resp. & Ethics in Wash. v. DOJ*, 854 F.3d 675, 681 (D.C. Cir. 2017).  If the withheld records implicate a substantial privacy interest, the plaintiff "bears the burden of showing (1) that 'the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) that the information [it] seeks 'is likely to advance that interest.'" *Roth v. DOJ*, 642 F.3d 1161, 1175 (D.C. Cir. 2011) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)).  Further, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (cleaned up).

As to Group 1, EOUSA withheld in full a 4-page "declaration of a third party" and released in part 297 pages except for "third-party names," "third-party addresses, names of law enforcement personnel, DOJ personnel, DOJ office numbers, and DOJ email[]" addresses.  Supp. Finney Decl. ¶¶ 25–26.  The withholdings include information about numerous "nonpublic EOUSA employees" and "other personally identifiable information" of third parties "compiled as a result of the USAO's fulfillment of its law enforcement duties." *Id.* ¶¶ 84, 87.  There appears to be no dispute that these records were "compiled for law enforcement purposes" because they contain identifying information about individuals who provided information or assisted in the prosecution of Groenendal. *Woodward v. U.S. Marshals Serv.*, 534 F. Supp. 3d 121, 127 (D.D.C. 2021)

Further, the Court agrees that these withholdings are consistent with Exemption 7(C)'s purpose of protecting personally identifying information, the disclosure of which would threaten substantial privacy interests.  As to EOUSA's withholding of third-party and investigation-subject information in the 4-page declaration and parts of the 297 pages, nondisclosure appears proper under the D.C. Circuit's "categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003) (cleaned up).  Indeed, such concerns are particularly acute in cases like this one in which the underlying criminal investigation concerns the sensitive topic of child pornography.  Further, redaction of information identifying public officials in the 297-page record also advances important privacy interests.  "[G]overnment officials do not surrender all rights to personal privacy when they accept a public appointment," *Bast v. DOJ*, 665 F.2d 1251, 1255 (D.C. Cir. 1981), and EOUSA has limited redactions to personally identifying information of non-public-facing employees, such as each employee's "name, address, place of

birth, employment history, and telephone number," *Shapiro v. DOJ*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014); *see* Supp. Finney Decl. ¶ 89; Defs.' Mot. for Summary Judgment at 15.

As to Group 5, EOUSA properly relies on Exemption 7(C) to withhold pornographic images of adult and children. The Group 5 records are contained in three exhibits, and two such exhibits are relevant to this analysis.[3] *See* Supp. Finney Decl. ¶ 50. Exhibit 1 "contains pornographic images" that "are not labeled as children or adult," and Exhibit 3 is "4 pages of computer monitoring that contain child pornographic images." *Id.* ¶ 53, 55. Exhibit 1 also "contains non-pornographic images of third parties." Defs.' Reply at 19, Dkt. 102-1. The aforementioned "categorical" rule against disclosure of third-party identifying information applies with even more force to these records. *Schrecker*, 349 F.3d at 661. As to Exhibit 1, even assuming the withheld photographs are adult pornography, "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators in not being associated unwarrantedly with alleged criminal activity." *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990) (cleaned up). Accordingly, the subjects of the adult pornography have privacy and reputational interests in not being associated with a child-pornography investigation. Further, as to Exhibit 3, it goes without saying that "[c]rime victims"—especially child victims— "have a cognizable privacy interest" in not having their explicit photographs or identities publicly disclosed. *Accurso v. FBI*, No. 19-cv-2540, 2021 WL 411152, at *5 (D.D.C. Feb. 5, 2021).

Despite the length of his filings, Groenendal does not apparently contest the privacy interests at stake, effectively conceding those arguments. *See Ford v . DOJ*, 208 F. Supp. 3d 237, 251 (D.D.C. 2016). Instead, he argues there is significant "public interest" in "having the truth

---

[3] All three Exhibits derive from the same computer-monitoring report. *See* Supp. Finney Decl. ¶¶ 52–55. This report was "compiled for law enforcement purposes" as discussed in Section III.B.3 *infra*.

exposed" as to government misconduct during his underlying criminal prosecutions.  Opp'n at 58.

When "governmental misconduct is alleged as the justification for disclosure, the public interest

is insubstantial unless the requester puts forward *compelling evidence* that the agency denying the

FOIA request is engaged in illegal activity and shows that the information sought is necessary in

order to confirm or refute that evidence." *McCutchen v. DHHS*, 30 F.3d 183, 189 (D.C. Cir. 1994).

Groenendal presents no such "compelling evidence" of misconduct.  *Id.*  Rather, he repeats

baseless allegations of government misconduct that, as discussed in Section III.A, *supra*, have

been previously rejected.  Nor does he advance any arguments why "access to the names and

addresses of private individuals appearing in files within the ambit of Exemption 7(C)" would be

"necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal

activity."  *SafeCard*, 926 F.2d at 1206.  Nor does he refute the significant privacy interests of the

subjects depicted in pornography found on his computer, especially children.  Groenendal simply

treats all of EOUSA's withholdings as a monolith covering up a botched prosecution.  Advancing

no "compelling evidence" beyond conspiratorial allegations of misconduct, *see id.* at 1205–06, he

cannot demonstrate a public interest outweighing the privacy interests at stake, *see Dent v. EOUSA*,

926 F. Supp. 2d 257, 269 (D.D.C. 2013) ("It is a FOIA requester's obligation to articulate a public

interest sufficient to outweigh an individual's privacy interest, and the public interest must be

significant.").  EOUSA's withholdings were thus proper.

Further, although EOUSA "does not expressly address" the foreseeable-harm requirement

as to the Exemptions 6 and 7(C), "a court may find the foreseeable-harm requirement satisfied if

'the very context and purpose of' the withheld material 'make[s] the foreseeability of harm

manifest.'"  *Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 21 (D.D.C. 2021) (quoting *Reps. Comm.

for Freedom of the Press v. FBI*, 3 F.4th 350, 372 (D.C. Cir. 2021)); *see Ball v. U.S. Marshals*

*Serv.*, No. 19-cv-1230, 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) ("When Exemption 7(C)

is invoked, for example, the justifications for non-disclosure generally are also sufficient evidence

of foreseeable harm.").  Here, the Supplemental Finney Declaration and the Vaughn index more

than clear this hurdle.   The declaration represents that disclosure of personally identifying

information of third parties and law-enforcement personnel assisting Groenendal's prosecutions

"could subject the individuals to an unwarranted invasion of their personal privacy by leading to

efforts to contact them directly or subject them to harassment or harm."  Supp. Finney Decl. ¶ 84;

*see also* Vaughn Index at 2, Dkt. 93 ("Disclosure could subject [private and public individuals] to

harassment both in the conduct of their official duties and private life.").   Here, the risk of

harassment is perhaps even more acute given Groenendal's penchant for prolific filings.   In all,

"[t]his is enough to show foreseeable harm under Exemption 7(C)."  *Ball*, 2021 WL 4860590, at

*9.

> 2.   *Exemption 3*

Exemption 3 permits the nondisclosure of materials that are "specifically exempted from

disclosure by [another] statute" so long as that statute "establishes particular criteria for

withholding or refers to particular types of matters to be withheld; and if enacted after the date of

enactment of the OPEN FOIA Act of 2009 specifically cites this paragraph."   5 U.S.C.

§ 552(b)(3)(A)–(B).  Here, EOUSA claims that Exemption 3 covers Exhibits 1 and 3 of its Group

5 response.  *See* Defs.' Reply at 17–18.  Exhibit 1 contains a 23-page "computer monitoring report"

containing "pornographic images" that "are not labeled as children or adult."  Supp. Finney Decl.

¶ 53.  Exhibit 3 is 4 pages "of computer monitoring that contain child pornographic images saved

to [Groenendal's] computer."  *Id.* ¶ 55.  According to EOUSA, both Exhibits are exempt from

disclosure under the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509, which

"qualifies as an Exemption 3 withholding statute," *Rodriguez v. Dep't of the Army*, 31 F. Supp. 3d 218, 237 (D.D.C. 2014).   Under this statute, the disclosure of "the name or any other information concerning a child" victim of a crime is prohibited.  18 U.S.C. § 3509(d)(1)(A)(i).  The Court has no trouble accepting that Exhibit 3 is doubly exempt from disclosure under Exemption 3 because it contains actual child pornography.  It thus contains "information concerning a child" that may not be disclosed.  *Id.*  Further, Exemption 3 covers "disclosure[s] . . . prohibited by law," 5 U.S.C. § 552(a)(8)(A)(i)(II), so no additional showing of foreseeable harm is needed, *see Rosenberg v. DOD*, 342 F. Supp. 3d 62, 73 n.1 (D.D.C. 2018).

As to Exhibit 1, however, EOUSA falls short of justifying withholding under Exemption 3.   Although Exhibit 1 "contains pornographic images," Supp. Finney Decl. ¶ 53, EOUSA represents that the images "*may* constitute child pornography" and "website links" that with a "not insignificant likelihood" "lead to pornographic images" that "are child porn," Defs.' Reply at 17–18 (emphasis added).  The plain language of 18 U.S.C. § 3509(d)(1)(A)(i) applies only to child victims, and here, EOUSA has not established that the pornographic images are in fact child pornography.  As such, the Court is not convinced Exhibit 1 is doubly covered under Exemption 3.  But the photographs in Exhibit 1 are nonetheless properly withheld under Exemption 7(C), and for the reasons stated in Section III.B.1, *supra*, EOUSA has shown foreseeable harm.

3.    *Exemptions 7(E), (F)*

Exemption 7 protects "records or information compiled for law enforcement purposes," so long as they fall within one of the statute's sub-sections.  5 U.S.C. § 552(b)(7).  EOUSA seeks to withhold all 150 pages of records (i.e., all three Exhibits) responsive to request Group 5 under subsections 7(E) and (F).   As discussed *supra*, the Court has already concluded that the pornographic images in Exhibits 1 and 3 are exempt from disclosure under Exemptions 6 and 7(C).

Exhibit 3 contains no other content besides the withheld images, so the only issue remaining is whether Exhibits 1 and 2—the remaining portions of the computer monitoring report collected during Groenendal's supervised release—were properly withheld under Exemptions 7(E) and/or 7(F).  The Court concludes that Exemption 7(E) covers the computer-monitoring report, so it has no need to evaluate whether 7(F) also applies.

"To fall within Exemption 7, documents must first meet a threshold requirement: that the records were compiled for law enforcement purposes." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202–03 (D.C. Cir. 2014) (cleaned up).  Law enforcement entails "proactive steps designed to prevent criminal activity and to maintain security." *Id.* at 203 (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 582 (2011) (Alito, *J.*, concurring)).  The agency "need only establish a rational nexus between the investigation and one of [its] law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (Kavanaugh, *J.*) (cleaned up).

Exhibits 1 and 2 satisfy this test.  Both are excerpts from the same computer monitoring report, which is a tool "law enforcement use[s] to ensure sex offenders do not reoffend by accessing prohibited materials including child pornography during supervised release." Defs.' Reply at 20.  The report thus sprang into existence as a routine part of law enforcement's efforts to monitor sex offenders who are at a heightened risk of reoffending.  As in *Blackwell*, the existence of "law enforcement purpose" "is especially convincing in this case because" Groenendal "explicitly sought records related to his own criminal prosecution." *Blackwell*, 646 F.3d at 40; *see* Supp. Finney Decl. ¶ 47 (noting Group 5 sought records "regarding Jack Groenendal involving case nos 1:11-cr-00260 & 1:07-cr-00093").

Clearing the threshold requirement, EOUSA properly withheld Exhibits 1 and 2 under Exemption 7(E).  This section protects information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The D.C. Circuit has described this is a "relatively low bar for the agency to justify withholding," and "an agency must demonstrate only that release of a document might increase the risk that a law will be violated or that past violators will escape legal consequences."  *Pub. Emps. for Env't Resp.*, 740 F.3d at 205 (cleaned up).  Here, Exhibits 1 and 2 contain "website links with corresponding dates and times," "search engine hits," and "search terms."  Defs.' Reply at 17–18.  Public access to this information could "*train* potential violators."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). For example, other sex offenders on supervised release with access to this information would gain knowledge that the particular "website links," "search engine hits," and "search terms" Groenendal used attracted the attention of law enforcement.  Defs.' Reply at 20; *see* Supp. Finney Decl. ¶ 92. Although "not necessarily provid[ing] a blueprint for" evading law-enforcement suspicion, this information "could reasonably be expected to risk circumvention of the law" because sex offenders could avoid use of those search terms and websites.  *Mayer Brown LLP*, 562 F.3d at 1193; *see Accurso*, 2021 WL 411152, at *6–8 (holding that Exemption 7(E) protected a computer-monitoring report describing "the software, techniques, and procedures" employed during an investigation into violations of child-pornography laws).

Further, EOUSA has satisfied the foreseeable-harm requirement.  "What an agency must do to show foreseeable harm under Exemption 7(E) is an open question," but as other judges in this district have noted, "Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm."  *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97,

127–28 (D.D.C. 2021).   As such, the requirement to show "some risk of circumvention before withholding material" under Exemption 7(E) "already forces the agency to show some risk of harm."  *Id.* at 128.  For the aforementioned reasons, the disclosure of the computer-monitoring report would enable sex offenders under supervision and would-be offenders to avoid detection by law enforcement.  *See* Supp. Finney Decl. ¶ 92.  Through such evasion, offenders may continue violating anti-child-pornography laws with impunity, undermining efforts to stop child exploitation.  EOUSA has thus shown that its withholdings under Exemption 7(E) were proper.

### 4.    *Exemption 5*

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant—including . . . the deliberative process privilege."  *Loving v. DOD*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted).  To invoke the deliberative process privilege, an agency must make several showings. First, "the communication must be 'inter-agency or intra-agency.'"  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (quoting 5 U.S.C. § 552(b)(5)).  Second, the information withheld must be both "predecisional" and "deliberative."  *Loving*, 550 F.3d at 38 (cleaned up).  Here, EOUSA invokes Exemption 5 to withhold part of an email exchange between AUSA Daniel Mekaru and an ICE agent describing "a proposed plea offer."  Supp. Finney Decl. ¶ 27; *see* Supp. Finney Decl. ex. T at 1.

The Court concludes that the email redaction was proper under the deliberative-process privilege.  First, the communication is plainly "inter-agency," 5 U.S.C. § 552(b)(5), as the sender

is AUSA Mekaru, *see* Supp. Finney Decl. ex. T at 1, and the recipient is an ICE agent, *see* Supp. Finney Decl. ¶ 27; Supp. Finney Decl. ex. T (showing the recipient's email ending in "dhs.gov").

Second, the redacted portion of the email is predecisional and deliberative.  A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'"  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  AUSA Mekaru's "plea-related email" is predecisional as it "documents the process by which" he "formulated a proposed plea offer decision" in consultation with "the investigative agency who investigated [Groenendal's] case, in an effort to agree on an appropriate proposed plea offer."  Supp. Finney Decl. ¶ 76.  Indeed, Finney's representation is corroborated by the unredacted portion of Exhibit T.  In that portion, the ICE agent responds to AUSA Mekaru's description of the proposed plea offer, stating "I think 10 to 20 is good.  [Groenendal's] guidelines are not that high for the TSR violations, so I think it should run consecutive."  Supp. Finney Decl. ex. T at 1.  Plainly, the U.S. Attorney's Office and investigators were expressing their opinions on the contents of a potential plea agreement before one was actually extended to Groenendal.  *See Judicial Watch, Inc.*, 449 F.3d at 151 (noting a communication is predecisional if "it was generated before the adoption of an agency policy").

Groenendal resists the predecisional label, asserting that prosecutors "offered all three attorneys of the Plaintiff, Fotieo, Samouris, and Turek plea offers, not part of any exemptions."  Opp'n at 56.  But as EOUSA correctly points out, *see* Defs.' Reply at 15, a "document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates," *Senate of the Commonwealth of P.R. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987).  Here, communications about whether to extend a plea offer obviously precede the ultimate decision to do so.

Further, the redacted email was deliberative. Finney represents that the redacted communication "was prepared to help supervisors at the District formulate a final agency position about whether to extend [Groenendal] a plea offer." Supp. Finney Decl. ¶ 77. As Exhibit T illustrates, the U.S. Attorney's Office and ICE were engaged in the "give-and-take of the consultative process," *Judicial Watch, Inc.*, 449 F.3d at 151, deciding whether, among other things, to recommend concurrent or consecutive sentences in light of Groenendal's sentencing exposure under the Sentencing Guidelines, *see* Supp. Finney Decl. ex. T. EOUSA thus reasonably concluded that the redaction was necessary to protect the agencies' deliberations over the terms of a plea agreement. *See Matthews v. FBI*, No. 15-cv-569, 2019 WL 1440161, at *5 (D.D.C. Mar. 31, 2019) (holding that a draft plea offer was properly deemed deliberative as it "represse[d] opinion on a legal matter" as to the "overall strength of the government's case" and "reflect[ed] the consultative process between the FBI and the Office of the United States Attorney").

EOUSA has also satisfied its burden of showing that release of these records would lead to foreseeable harm under 5 U.S.C. § 552(a)(8)(A)(i)(I). *See Reps. Comm.*, 3 F.4th at 369. "In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'— adversely impair internal deliberations." *Id.* at 369–70. A "perfunctory state[ment] that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the [agency]" is insufficient. *Id.* at 370 (cleaned up). The agency must make "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*

Here, the Supplemental Finney Declaration satisfactorily lays out the foreseeable harm from disclosing internal communications like AUSA Mekaru's. Finney first outlines the "role" of the redacted communication "in the relevant agency decisional processes." *Reps. Comm.*, 3 F.4th at 372. Before extending a plea offer, prosecutors must communicate internally and with other agencies about "the strength of evidence, calculations for potential sentencing terms, the willingness of witnesses to participate in a trial, and the ease or difficulty of proving the charges against a defendant." Supp. Finney Decl. ¶ 78. Disclosure of such communications would deter line prosecutors from "creat[ing] the most thorough and candid documents possible" to keep other "Executive Branch decision-makers" informed, and it would prevent "senior leadership" from receiving "forthright advice on [the] critical matter[]" of whether to extend a plea offer to a defendant. *Id.* ¶ 79. Further, Finney highlights "the particular sensitivity of th[is] type[] of information." *Reps. Comm.*, 3 F.4th at 372. Disclosure "would arm those potential future violators with critical insights about how to game the criminal justice system in child pornography cases" or how to "gain overly lenient plea offers." Supp. Finney Decl. ¶ 78. In the Court's view, these representations reflect that EOUSA has "specifically and thoughtfully determine[d]" that it "reasonably foresees that disclosure" of the email would be harmful. *Reps. Comm.*, 3 F.4th at 372.

## C.    Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency may satisfy this obligation by "(1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 207 (D.D.C. 2013). The segregability requirement does not

apply to non-exempt material that is "inextricably intertwined" with exempt material, *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), and agencies are entitled to a "presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman*, 494 F.3d at 1117.  Even if a plaintiff fails to contest segregability (as is the case here), "the court is required to address segregability sua sponte."  *Aftergood v. CIA*, 355 F. Supp. 2d 557, 561 n.1 (D.D.C. 2005).

EOUSA and ICE have satisfied these requirements.  As to EOUSA, the Finney declaration "attest[s] to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a Vaughn index describing the withheld record, suffice."  *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) (citing *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002)); *see* Finney Decl. ¶ 79 ("In reviewing the responsive material, [EOUSA] staff conducted a detailed line-by-line review to satisfy [its] reasonable segregability obligations . . . . The responsive material was either exempt itself or was so intertwined with non-exempt information that segregation of the non-exempt information was not reasonably possible.").  EOUSA's Vaughn index also provides additional insight into its record-by-record review, including details about the scope of particular redactions and releases.  *See* Vaughn Index at 1–3.  Although the Vaughn Index's description of EOUSA's response to Group 5 provides only a high-level description of the 150 pages withheld in full, EOUSA submitted a supplemental declaration breaking down the Group 5 withholdings and reaffirming the non-segregability of all withholdings.  *See* Supp. Finney Decl. ¶¶ 53–55, 97.

As to ICE, searches responsive to Groups 2 and 3 "did not produce any responsive records," so "there was no segregability analysis to conduct."  *Goldstein v. IRS*, 279 F. Supp. 3d 170, 190

(D.D.C. 2017).  ICE nevertheless conducted a segregability analysis of records responsive to ICE Group 1 for good measure.  Pineiro Decl. ¶¶ 30, 31 ("[I]n an abundance of caution, [ICE] conducted a review of the records responsive to FOIA Request No. 1 for segregable information. My staff, under my supervision, has reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of an exemption could be applied."). Although it was not required to do so because ICE Group 1 is not at issue in this case, ICE has satisfied the Court that it took diligent efforts to search for and release any segregable records in response to Group 1 that might have been responsive to Groups 2 and 3. Given these declarations, EOUSA's *Vaughn* index, and the presumption of agency good faith, the Court concludes that EOUSA and ICE have complied with their segregability obligations.

>    **D.**     **Miscellaneous Motions**

Groenendal's pending motions for discovery, *in camera* review, expedited proceedings, and an extension of time to file a notice of appeal all lack merit.  First, discovery is not warranted. "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains."  *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2007) (cleaned up).  Limited discovery is typically only permitted when the agency has acted in bad faith.  *See id.*  Here, as discussed in Section III.A, *supra*, Groenendal has introduced no credible evidence of bad faith, and EOUSA and ICE have persuaded the Court that their searches were adequate.  As such, discovery is not warranted.

Second, and for similar reasons, *in camera* review is unwarranted.  "If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the

record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (cleaned up).  Given the agencies' affidavits were "sufficiently detailed," Groenendal advances no plausible "evidence of bad faith," and the agencies' withholdings were proper, the Court concludes that *in camera* review is also "not necessary.  *ACLU v. DOD*, 628 F.3d 612, 627 (D.C. Cir. 2011).  Groenendal seeks *in camera* review "to ensure that the government fulfilled its Rule 16 obligations."  Mot. for In Camera Review of Withheld FOIA Documents Noted at 2, Dkt. 99.  But Rule 16 of the Federal Rules of Criminal Procedure is not the operative standard here, and it is not the Court's role to supervise the government's compliance with Rule 16 in separate proceedings.

Third, the accompanying order resolving all pending motions moots Groenendal's motions to expedite, including his Rule 12(c) motion, which the Court construes as a motion to expedite. As with any case, the Court seeks to resolve pending motions expeditiously.  The Court would be remiss, however, not to note (again) that the sheer volume of Groenendal's filings has contributed to any delay.  *See* Min. Order of June 16, 2023.  To the extent Groenendal actually seeks a judgment on the pleadings under Rule 12(c), he relies on documents beyond the pleadings, so the Court will convert the motion to a motion for summary judgment and deny it for the aforementioned reasons. *See Jeffries v. Garland*, No. 15-cv-1007, 2022 WL 2982169, at *8 (D.D.C. July 27, 2022) (denying Rule 12(c) motion when "summary judgment remains the proper mode of analysis").

Finally, the Court will deny the motion for an extension of time to file a notice of appeal. In his August 21, 2023 motion, Groenendal sought an extension because he anticipated undergoing knee surgery that would require 5-8 weeks of physical therapy.  *See* Mot. for Leave to File for an Extension at 1, Dkt. 105.  Since then, he has continued to file motions, leading the Court to believe he is capable of timely filing a notice of appeal.  *See, e.g.*, Mot. to Expedite, Dkt. 110.

**CONCLUSION**

For the foregoing reasons, the Court will grant the defendants' Motion for Summary Judgment and deny Groenendal's Cross-Motion for Summary Judgment and various other motions.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 27, 2024